UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS                                        CRIMINAL NO. 25-114-JWD-EWD

STANDLEY DEVONTAE YATES

### ORDER OVERRULING DEFENSE OBJECTION TO GOVERNMENT'S MOTION FOR DETENTION HEARING

Defendant Standley Devontae Yates has been charged by indictment under 18 U.S.C. § 922(o) with possession of a machinegun; however, the facts of the case are that the defendant possessed only a machinegun conversion device (commonly referred to as an "MCD"). The government moved for a detention hearing under 18 U.S.C. § 3142(f)(1)(E) on the basis that the offense charged involves the possession of a dangerous weapon and under 18 U.S.C. § 3142(f)(2)(A) on the basis that the defendant poses a serious risk of flight. At the initial appearance, defense counsel objected that the government had not established a sufficient basis for a detention hearing under either provision. The court preliminarily found that the government had presented information to meet its burden for a detention hearing under 18 U.S.C. §3142(f)(2)(A) and 18 U.S.C. §3142(f)(1)(E) but allowed additional briefing.[1] Both parties have submitted briefs, which the court has considered.[2]

The relevant provision of the Bail Reform Act provides as follows, "[t]he judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community---

    (1) Upon motion of the attorney for the Government, in a case that involves—

---

[1] R. Doc. 8.
[2] R. Docs. 12, 14, 15.

> \*\*\*
>
> (E) any felony that is not otherwise a crime of violence that involves a minor victim or that involves the possession or use of a firearm or destructive device (as those terms are defined in section 921), or any other dangerous weapon ….[3]

The government has the burden of establishing the right to a detention hearing by a preponderance of the evidence.[4]

While an MCD is chargeable as a machinegun under 18 U.S.C. § 922(o), which defines a machinegun based on its meaning in the National Firearms Act to include any part designed for use in converting a weapon into a machinegun,[5] and a machinegun is a firearm under the National Firearms Act,[6] 18 U.S.C. § 3142(f)(1)(E) pulls its definition of "firearm" from 18 U.S.C. § 921, which does not expressly include machineguns. Instead, 18 U.S.C. § 921(a)(3) defines a "firearm"

---

[3] 18 U.S.C. § 3142(f)(1)(E).

[4] *United States v. Elizondo*, No. 24-157, 2024 WL 1546488, at \*2 (S.D. Tex. April 10, 2024) ("The Government may move for a detention hearing but must prove by a preponderance of the evidence that the case meets one of the six circumstances listed in § 3142(f)(1) and (2). *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992); accord *United States v. Watkins*, 940 F.3d 152, 158 (2nd Cir. 2019)"); *see also, United States v. Chokr*, No. 23-20037, 2023 WL 375336, at \*6, n. 2. (E.D. Mich. Jan. 24, 2023) ("Courts within this district have applied a preponderance of the evidence standard when assessing the government's entitlement to a detention hearing. *See United States v. Hunter*, No. 22-30177 (E.D. Mich. May 23, 2022); *United States v. Clark*, No. 22-20041 (E.D. Mich. Apr. 5, 2022)").

[5] Under 26 U.S.C. § 5845(b), "[t]he term 'machinegun' means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person."

[6] 26 U.S.C. § 5845(a) defines firearm as follows:

> The term "firearm" means (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined in subsection (e); (6) *a machinegun*; (7) any silencer (as defined in section 921 of title 18, United States Code); and (8) a destructive device. The term "firearm" shall not include an antique firearm or any device (other than a machinegun or destructive device) which, although designed as a weapon, the Secretary finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon. (emphasis added)

as "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."[7]

So, instead of arguing that, by possessing the MCD, the defendant possessed a firearm, in seeking a detention hearing the government argues that the defendant possessed a dangerous weapon. There is no definition of "dangerous weapon" under the Bail Reform Act. However, at the defendant's initial appearance, the parties' agreed that the definition in *United States v. Chansley*,[8] a 2021 case from the District of Columbia, was appropriate.

There, an individual, who participated in the breach of the United States Capitol on January 6, 2021, was charged with civil disorder in violation of 18 U.S.C. § 231(a)(3) and with obstruction of an official proceeding in violation of 18 U.S.C. § 1752(a)(1).[9] The government moved for a detention hearing under § 3142(f)(1)(E), arguing that the defendant carried a dangerous weapon, a flagpole with a spear finial on top, into the Capitol during the commission of the charged offenses.[10] Borrowing from the federal assault statutes, 18 U.S.C. §§ 111 and 113, the *Chansley* court stated that "courts have consistently defined 'dangerous weapon' as an object that is either inherently dangerous or is used in a way that is likely to endanger life or to inflict great bodily harm."[11] Finding that, because of the metal spearhead fixed to the top, the flagpole was

---

[7] The government acknowledges in its brief that it is "unaware of any caselaw construing an MCD, alone, as a 'firearm' under § 921." R. Doc. 14, p. 2, n. 4.

[8] 525 F.Supp.3d 151 (D.D.C. March. 8, 2021).

[9] 525 F.Supp.3d at 161.

[10] *Id.*

[11] *Id.* at 161-62.

3

"undoubtedly, a dangerous weapon," the court held that the government established a basis for a detention hearing in *Chansley* under § 3142(f)(1)(E).[12]

The government argues that, under the *Chansley* definition, an MCD is a dangerous weapon because its only purpose is to convert a semi-automatic firearm into a fully automatic machinegun. There is no innocuous, alternative purpose for an MCD like the flagpole at issue in *Chansley*. The defense argues that an MCD cannot be considered a dangerous weapon unless it is attached to a firearm. The government counters the defense argument that, because the MCD in this case was not yet attached to a gun, it cannot be considered dangerous, by pointing out that the *Chansley* court did not require that the item actually be used to cause bodily harm to be considered inherently dangerous.[13]

Nothing in the briefing changes the initial opinion of the court on this issue, stated at the initial appearance. The parties acknowledge that there are no cases evaluating whether MCDs are dangerous weapons for purposes of a detention hearing under § 3142(f)(1)(E), nor were any cases located by the Court. Further, most of the cases considering whether an item is a dangerous weapon under the applicable statutory provisions are evaluating whether common items (like a flagpole) that are being used in a dangerous manner fall within the scope of the provisions. That is not what is at issue here. Instead, an MCD has no innocuous purpose of which the Court is aware. An MCD's only purpose is to attach to a gun and make it shoot bullets faster. While the defense argument is obvious that, until an MCD is actually attached to the firearm, it is not, in and of itself, dangerous, the argument misses the point.

---

[12] *Id.* at 162.

[13] R. Doc. 14, p. 4, citing *Chansley*, 525 F.Supp.3d at 162 ("Thus, because defendant's six-foot spear is inherently dangerous, it does not matter whether defendant actually used it to cause bodily harm while inside the Capitol" (citing *United States v. Smith*, 561 F.3d 934, 939 (9th Cir. 2009) (*en banc*) (emphasis in original)).

An MCD is somewhat like a silencer.[14] By itself, a silencer certainly could not be said to cause harm. However, at least one court found that a defendant charged with conspiracy to possess an unregistered silencer, in violation of 18 U.S.C. § 371 and possession of an unregistered silencer and destructive device in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871 was charged with crimes of violence under 18 U.S.C. § 3156. In *United States v. Dodge*, the court stated, "Section 3156(a)(4)(B) defines a 'crime of violence' as 'any ... offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another *may* be used in the course of committing the offense.' (Emphasis added.) Actual use of physical force against another is not an essential element of a 'crime of violence' under this section, as evidenced by the use of the conditional term 'may.' Rather, the inquiry must focus on whether the crimes alleged presented a 'substantial risk' of use of force during their pendency. *See United States v. Aiken*, 775 F.Supp. 855, 856 (D. Md. 1991)."[15] "[B]oth a silencer and a pipe bomb are inherently dangerous weapons for which no peaceful purpose can be seriously suggested, regardless of whether the weapons actually are used . . . .The mere possession of such weapons, therefore, presents a 'substantial risk' of physical injury to others."[16]

*United States v. Serna* further explains the reasons silencers, which are not necessarily capable alone of inflicting substantial injury, are still considered particularly dangerous:

> So long as the item in question has substantial legitimate uses, its mere possession cannot, without more, constitute a crime of violence.

---

[14] Although a silencer is within the definition of a "firearm" under 18 U.S.C. § 921(a)(3)(C), such that a detention hearing would be permitted under 18 U.S.C. § 3142(f)(1)(E) for possession only of a silencer, as a practical matter, a silencer is not capable of expelling a bullet without an actual firearm attached. In that way, it is more like an accessory, similar to an MCD.

[15] 846 F.Supp. 181, 183-184 (D. Conn. 1994).

[16] *Id.* at 184. Under 18 U.S.C. § 3142(f)(1)(A) the government may move a detention hearing in a case that involves a crime of violence. Although the government did not seek detention on that basis in this case, *Dodge* is instructive for the reasons a silencer is dangerous.

5

On the other hand, if we know that an object has no lawful uses, we can presume that someone who possesses it intentionally does so for the purpose of using it illicitly. And, if the universe of uses for such an object is largely confined to illegitimate violence, we can infer that the object will be used to intimidate or inflict physical injury during the course of an unlawful transaction. We have thus held that illegal possession of such a weapon—like a silencer or a sawed-off shotgun—is a crime of violence. *See United States v. Delaney*, 427 F.3d 1224, 1226 (9th Cir. 2005); *United States v. Hayes*, 7 F.3d 144, 145 (9th Cir. 1993); *United States v. Huffhines*, 967 F.2d 314, 320-21 (9th Cir. 1992). What distinguishes silencers or sawed-off shotguns from other dangerous firearms isn't the amount of injury they're capable of inflicting—there are many weapons that can cause a lot more injury than a silencer. What makes silencers and sawed-off shotguns different from ordinary weapons is that they have few, if any, legitimate uses. Unlike an ordinary firearm, neither is likely to serve any sporting or self-defense purpose. Thus, we have held that they "are inherently dangerous, lack usefulness except for violent and criminal purposes and their possession involves the substantial risk of improper physical force." *Delaney*, 427 F.3d at 1226 (quoting *Hayes*, 7 F.3d at 145 (internal quotation marks omitted)).[17]

The explanation in *Serna* for what makes silencers dangerous is readily extended to MCDs—they have no legitimate uses; unlike firearms, they serve no sporting or self-defense purposes; and they are generally used for violent and criminal reasons. In other words, MCDs are inherently dangerous, such that they qualify as dangerous weapons under 18 U.S.C. § 3142(f)(1)(E).

As the government in this case has met its burden of establishing grounds for a detention hearing under that provision, it is not necessary to reach the government's argument for a detention hearing under 18 U.S.C. § 3142(f)(2)(A).

Accordingly,

---

[17] *United States v. Serna*, 435 F.3d 1046, 1047-48 (9th Cir. 2006). *Serna* was evaluating whether possession of an assault weapon in violation of a state statute was a crime of violence under federal sentencing guidelines, but the analysis is instructive.

**IT IS ORDERED** that the defense objection to the government's motion for a detention hearing is **OVERRULED**.

Signed in Baton Rouge, Louisiana, on November 6, 2025.

                                                 */s/ Erin Wilder-Doomes*
                                            **ERIN WILDER-DOOMES**
                                            **UNITED STATES MAGISTRATE JUDGE**