UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | CRIMINAL ACTION |
| VERSUS | |
| | NO. 25-114-JWD-EWD |
| STANDLEY DEVONTAE YATES | |

**RULING AND ORDER**

  This matter comes before the Court on the *Motion for Amendment of the Order of Detention Pending Trial* (Doc. 24) filed by Defendant Standley Devontae Yates ("Defendant"). The Government opposes the motion, (Doc. 26), and has filed a supplemental memorandum with evidence, (Doc. 28). Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendant's motion is denied.

**I. RELEVANT BACKGROUND**

  Defendant is charged with possessing a machine gun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2). (Doc. 1.) Specifically, the Indictment alleges that Defendant possessed a machinegun conversion device ("MCD") for a Glock-style pistol. (*Id.*)

  At the initial appearance, the Government moved for a detention hearing in part under 18 U.S.C. § 3142(f)(1)(E). (Doc. 8.) Under that statute, the Government can so move in cases involving "any felony that is not otherwise a crime of violence . . . that involves the possession or use of a firearm or destructive device (as those terms are defined in section 921), or any other dangerous weapon. . . ." 18 U.S.C. § 3142(f)(1)(E). Magistrate Judge Wilder-Doomes concluded that the government met its initial burden for a detention hearing under that law, but she allowed

defense counsel an opportunity to provide additional briefing and evidence to challenge the grounds for a detention hearing. (Doc. 8.)

After that briefing was submitted, (Docs. 12, 14, 15), defendant again appeared before the Magistrate Judge on November 4, 2025, (Doc. 17). There, she made an oral finding that the government met its burden for a detention hearing under 18 U.S.C. §3142(f)(1)(E) as this case involves the possession of a dangerous weapon. (Doc. 17 at 1.) Defendant stipulated to detention, reserving his right to reopen the issue of detention should his circumstances change. (*Id.* at 2.) Based on the Defendant's stipulation, the court granted the government's motion for detention and ordered him detained subject to his right to reopen the issue of detention upon petitioning the court for same. (*Id.*)

Magistrate Judge Wilder-Doomes assigned written reasons a few days later. (Doc. 20; *United States v. Yates*, No. CR 25-114-JWD-EWD, 2025 WL 3124030 (M.D. La. Nov. 7, 2025).) She explained, "There is no definition of 'dangerous weapon' under the Bail Reform Act. However, at the defendant's initial appearance, the parties' agreed that the definition in *United States v. Chansley*, a 2021 case from the District of Columbia, was appropriate." *Yates*, 2025 WL 3124030, at *2 (citing *United States v. Chansley* 525 F. Supp. 3d 151 (D.D.C. 2021)). "Borrowing from the federal assault statutes, 18 U.S.C. §§ 111 and 113, the *Chansley* court stated that 'courts have consistently defined "dangerous weapon" as an object that is either inherently dangerous or is used in a way that is likely to endanger life or to inflict great bodily harm.'" *Id.* (quoting *Chansley*, 525 F. Supp. 3d at 161–62). As will be explained further below, Magistrate Judge Wilder-Doomes looked to other cases which have held that silencers are inherently dangerous weapons, and she concluded that, for the same reasons, MCDs are dangerous weapons under the

2

Bail Reform Act. *Id.* at *2–4. Defendant now moves to amend her order of detention pursuant to 18 U.S.C. § 3145(b). (Doc. 24.)

## II. RELEVANT STANDARD

Under § 3145(b), "[i]f a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly."

"When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions for release." *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992) (citing *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985)). "Absent an error of law, [the Fifth Circuit] must uphold a district court order 'if it is supported by the proceeding below,' a deferential standard of review . . . equate[d] to the abuse-of-discretion standard." *Id.* at 586 (citing *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989)).

## III. DISCUSSION

### A. Parties' Arguments

Defendant argues that "[p]ertinent jurisprudence has since now come to light that was not presented to Magistrate Judge Wilder-Doomes at the detention hearing." (Doc. 24 at 1–2.) Defendant highlights the fact that *Chansley* is distinguishable because Defendant was found with no firearms, and Defendant instead cites to *United States v. Easterday*, 729 F. Supp. 3d 17 (D.D.C. 2024). (*Id.* at 2–3.) According to Defendant, *Easterday* establishes that the Government must prove that "an MCD, by itself, (1) is a dangerous weapon, (2) is capable of causing serious bodily injury or death to another, and (3) was used by Defendant in a manner capable of causing serious injury." (*Id.* at 3.) Defendant also relies on *United States v. Alsenat*, 734 F. Supp. 3d 1295, 1306 (S.D. Fla.

3

2024), which purportedly found that a MCD is not, by itself, dangerous, as it "cannot be used to hurt anybody . . . unless you hit them over the head." (*Id.* (quoting *Alsenat*, 734 F. Supp. 3d at 1309, 1310).) Defendant maintains that the MCD is not inherently dangerous or capable of inflicting bodily harm because "the device itself cannot be used for purposes of causing bodily harm. Such device only derives its component of dangerousness from attachment to and use with a firearm, which Defendant was not in possession of." (*Id.* at 3–4.)

The Government responds that "*Chansely* . . . provides the best definition for a dangerous weapon in this context" and "[u]nder this definition, MCDs are dangerous weapons for purposes of the Bail Reform Act." (Doc. 26 at 5.) MCDs are "inherently dangerous, as [their] only purpose . . . is to convert a semi-automatic firearm . . . into a fully automatic machinegun[,]" and "[t]here is no innocuous, peaceful purpose to consider." (*Id.*)

The Government also takes issue with Defendant's reliance on *Easterday* and *Alsenat*. (*Id.* at 6–8. ) According to the Government, *Easterday* involved a post-conviction dispute about the definition of "dangerous weapon" in jury instructions and thus the merits of the conviction. (*Id.* at 6.) Conversely, *Chansely* dealt with the "same procedural stage of the prosecution as the instant case, [and] applied a different definition, one that separated out the inherently dangerous weapons from those that need more consideration based on their 'use.'" (*Id.* at 7.) Similarly, the Government says, the Court should not rely on *Alsenat* because that case involved a motion to dismiss and "*Heller*'s historical test for constitutionality under the Second Amendment[,]" which is markedly different than whether a MCD is a "dangerous weapon" under the Bail Reform Act. (*Id.*) Ultimately, *Chansley* is correct that there is no requirement that a defendant actually use the object for it to be deemed inherently dangerous. (*Id*. at 7–8 (citing *Chansley*, 525 F. Supp. 3d at 162).) "Instead, it is an MCD's inherent characteristics, not its use in a particular case, which make it a

4

dangerous weapon. Judge Wilder-Doomes found just that; an MCD's only purpose is a dangerous one and therefore, it is a dangerous weapon. This Court should find the same." (*Id.* at 8.)

The Government also submits a supplemental memorandum and evidence to support the conclusion that a MCD is a dangerous weapon. (Doc. 28.) First, the Government offers the declaration of ATF Firearms Enforcement Officer ("FEO") John W. Miller, who explains how "once an MCD is installed and activated in a semi-automatic firearm, the rate of fire is no longer limited by the speed of the shooter's trigger finger, and the firearm is therefore capable of a higher rate of fire than without the MCD, up to 900 rounds per minute." (Doc. 28-1 at 1–2.) Second the Government submits a video of an ATF officer installing an MCD on a firearm and then discharging the weapon with and without the MCD activated, all of which shows how quickly an MCD can be installed, with "no tools or special skills . . . required[,]" and "the extraordinary fire rate of firearms equipped with MCDs." (*Id.* at 2.) And, third, the Government provides the expert report of ATF FEO Jeffrey L. Openshaw, who writes about the MCD in this case. (*Id.*)

### B. Law and Analysis

Having carefully considered the matter, the Court will deny Defendant's motion. In sum, (1) the Court agrees with the Magistrate Judge's ruling; (2) the Court rejects Defendant's reliance on *Alsenat* and *Easterday*; and (3) the Court finds convincing the Government's evidence that MCDs are inherently dangerous.

First, the Court finds highly persuasive Magistrate Judge Wilder-Doomes' entire opinion, but particularly her analogy of MCDs to silencers. She explained:

> [A]n MCD has no innocuous purpose of which the Court is aware. An MCD's only purpose is to attach to a gun and make it shoot bullets faster. While the defense argument is obvious that, until an MCD is actually attached to the firearm, it is not, in and of itself, dangerous, the argument misses the point.

> An MCD is somewhat like a silencer. By itself, a silencer certainly could not be said to cause harm. However, at least one court found that a defendant charged with conspiracy to possess an unregistered silencer, in violation of 18 U.S.C. § 371 and possession of an unregistered silencer and destructive device in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871 was charged with crimes of violence under 18 U.S.C. § 3156. In *United States v. Dodge*, the court stated, "Section 3156(a)(4)(B) defines a 'crime of violence' as 'any . . . offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another *may* be used in the course of committing the offense.' (Emphasis added.) Actual use of physical force against another is not an essential element of a 'crime of violence' under this section, as evidenced by the use of the conditional term 'may.' Rather, the inquiry must focus on whether the crimes alleged presented a 'substantial risk' of use of force during their pendency. *See United States v. Aiken*, 775 F. Supp. 855, 856 (D. Md. 1991)." [846 F. Supp. 181, 183-184 (D. Conn. 1994).] "[B]oth a silencer and a pipe bomb are inherently dangerous weapons for which no peaceful purpose can be seriously suggested, regardless of whether the weapons actually are used . . . . The mere possession of such weapons, therefore, presents a 'substantial risk' of physical injury to others." [*Id.* at 184].

*Yates*, 2025 WL 3124030, at *1–2. Magistrate Judge Wilder-Doomes was also convinced by *United States v. Serna*, which examined why silencers are dangerous, even though they are "not necessarily capable alone of inflicting substantial injury[:]"

> So long as the item in question has substantial legitimate uses, its mere possession cannot, without more, constitute a crime of violence.
>
> On the other hand, if we know that an object has no lawful uses, we can presume that someone who possesses it intentionally does so for the purpose of using it illicitly. And, if the universe of uses for such an object is largely confined to illegitimate violence, we can infer that the object will be used to intimidate or inflict physical injury during the course of an unlawful transaction. We have thus held that illegal possession of such a weapon—like a silencer or a sawed-off shotgun—is a crime of violence. *See United States v. Delaney*, 427 F.3d 1224, 1226 (9th Cir. 2005); *United States v. Hayes*, 7 F.3d 144, 145 (9th Cir. 1993); *United States v. Huffhines*, 967 F.2d 314, 320-21 (9th Cir. 1992). What distinguishes silencers or sawed-off shotguns from other dangerous firearms isn't the amount of injury

6

> they're capable of inflicting—there are many weapons that can cause a lot more injury than a silencer. What makes silencers and sawed-off shotguns different from ordinary weapons is that they have few, if any, legitimate uses. Unlike an ordinary firearm, neither is likely to serve any sporting or self-defense purpose. Thus, we have held that they "are inherently dangerous, lack usefulness except for violent and criminal purposes and their possession involves the substantial risk of improper physical force." *Delaney*, 427 F.3d at 1226 (quoting *Hayes*, 7 F.3d at 145 (internal quotation marks omitted)).

*Id.* at *3 (quoting *United States v. Serna*, 435 F.3d 1046, 1047-48 (9th Cir. 2006)).

After an independent review, this Court agrees with Magistrate Judge Wilder-Doomes' conclusion that the same reasoning applies with equal force to MCDs. These devices (1) "have no legitimate uses;" (2) "unlike firearms, . . . .serve no sporting or self-defense purposes;" and (3) "are generally used for violent and criminal reasons." *Id.* at *3. Thus, because "MCDs are inherently dangerous, . . . they qualify as dangerous weapons under 18 U.S.C. § 3142(f)(1)(E)." *Id.*

The Court also agrees with the Government that this case is closer to *Chansely* than *Easterday* and *Alsenat*. In fact, contrary to Defendant's position, *Alsenat* actually supports the Court's decision.

In *Alsenat*, the district court rejected a Second Amendment challenge to § 922(o) on two grounds: (1) "machineguns (and, by extension, MCDs) are 'dangerous and unusual' under any formulation of *Heller/Miller* analysis[;]" and (2) "alternatively that an MCD, possessed by itself, is not an "Arm" under the Second Amendment at all, and thus is not entitled to any Second Amendment protection—regardless of any *Heller/Miller* analysis." 734 F. Supp. 3d at 1306. While the Court does use some language indicating that MCDs are not inherently dangerous, the Court's holding on this issue could not be clearer; after finding machineguns "and, by extension, MCDs" to be "dangerous and unusual[,]" the Court turned to the question of whether an MCD is an "Arm" under the Second Amendment. *Id.* The court began:

7

> So far, this Court does not plow any new ground. But the Indictment challenged here does not allege the possession of a weapon or firearm at all; instead, it alleges only the knowing possession of an MCD which, as defined by Congress in 26 U.S.C. § 5845(b), is a "machinegun" for purposes of 18 U.S.C. § 922(o)(1). The Indictment only alleges that Defendant possessed an MCD by itself, without any connection or proximity to any firearm or other firearm components. <u>The Court assumed, for the purposes of the above analysis, that MCDs are "Arms" under the Second Amendment, and then proceeded with *Heller/Miller* analysis of whether the devices are "in common Use," or "dangerous and unusual," and concluded on those grounds (as have many other courts) that they should not be afforded Second Amendment protection.</u>
>
> On the facts presented by this Indictment, however, this Court concludes <u>alternatively</u> that an MCD, possessed by itself, is not an "Arm" under the Second Amendment at all, and thus is not entitled to any Second Amendment protection—regardless of any Heller/Miller [*Heller/Miller*?] analysis. Therefore, the statutes underlying the Indictment as applied to the Defendant are constitutional.

*Id.* Thus, the Court's holding—that MCDs are "dangerous and unusual"—actually supports the Government, and the language tending to support the Defendant is offered in the alternative.

Additionally, to the extent the second alternative ground is relevant, *Alsenat* reenforces this Court's decision in another way. *Alsenat* also recognized the similarity of MCDs to silencers. *Id.* at 1308–09 (discussing how firearm accessories like silencers are not "bearable arms" protected by the Second Amendment (quoting *United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018))). Thus, for this additional reason, *Alsenat* supports the above analogy of MCDs to silencers; both are inherently dangerous and thus dangerous weapons.

*Easterday*, on the other hand, is distinguishable. In that case, the defendant was charged with "multiple criminal counts . . . including two assaults on Capitol Police officers using pepper spray" during the storming of the U.S. Capitol on January 6, 2021. 729 F. Supp. 3d at 20. As the Government contends, the key question in *Easterday* was "whether the jury was properly

8

instructed on what qualifies as a dangerous or deadly weapon" for purposes of those crimes. *Id.* Defendant argued for a new trial on the grounds that "the Court's definitions improperly swept in all instruments theoretically capable of causing serious bodily injury without reference to the dangerousness of their use." *Id.* at 23. *Easterday* rejected this argument and relied on *Unted States v. Arrington*, 309 F.3d 40 (D.C. Cir. 2002), which found that "a weapon is dangerous if 'capable of causing serious bodily injury or death to another person and the defendant . . . use[d] it in that manner.'" *Id.* at 23 (quoting *Arrington*, 309 F.3d at 45). The Court ultimately concluded, "In sum, it is convinced that *Arrington* means what it says — namely, that for purposes of § 111(b)'s dangerous-or-deadly-weapon element, it is enough to establish that an object was used in a manner capable of causing serious injury. The Court's instruction, accordingly, was not erroneous." *Id.* at 26.

    The Court agrees with the Government that *Chanseley* is more applicable. There, the Court looked at the definition of "dangerous weapon" for purposes of the Bail Reform Act. 525 F. Supp. 3d at 161–62. *Chanseley* correctly concluded that this definition includes items that are "inherently dangerous," which are "those that are 'obviously dangerous'' such as 'guns, knives, and the like.'" *Id.* at 161–62 (quoting *United States v. Smith*, 561 F.3d 934, 939 (9th Cir. 2009) (en banc)). Such items are dangerous regardless of "whether defendant *actually used it* to cause bodily harm . . . ." *Id.* at 162 (citing *Smith*, 561 F.3d at 639). As *Alsenat* and the Magistrate Judge found, an MCD falls into this category.

    And third, the Court finds that the evidence submitted by the Government with its supplemental memorandum supports the conclusion that MCDs are inherently dangerous and thus dangerous weapons. ATF FEO Miller testified that (1) "an MCD can be easily attached to semiautomatic firearm within seconds, thereby converting the firearm into a fully automatic

9

machinegun, as defined by federal law[,]" (Miller Decl. ¶ 4, Doc. 28-2); and (2) "[o]nce an MCD is installed and activated in a semi-automatic firearm, the rate of fire is no longer limited by the speed of the shooter's trigger finger, and the firearm is therefore capable of a higher rate of fire than without the MCD, up to 900 rounds per minute[,]" (*id.* ¶ 5). The video footage submitted by the Government powerfully confirms both points, (Doc. 28-3), and the second ATF report explains why the MCD in this case is a machinegun. (Doc. 28-3.) All of this supports the Court's ruling.

For all these reasons, the Court finds that an MCD is a dangerous weapon for purposes of the Bail Reform Act. The Magistrate Judge committed no error in ordering a detention hearing under 18 U.S.C. §3142(f)(1)(E), and, indeed, the Court agrees with her decision. As a result, Defendant's motion will be denied.

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion for Amendment of the Order of Detention Pending Trial* (Doc. 24) filed by Defendant Standley Devontae Yates is **DENIED**.

Signed in Baton Rouge, Louisiana, on December 15, 2025.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**